Weldon, J.,
delivered the opinion of the court:
On the 24th of April, 1858, the decedent entered into two contracts with the United States for carrying the mail in the State of Mississippi, as shown in Finding II.
On one contract he was to receive an annual compensation of $1,779, and on the other an annual compensation of $793. Upon these contracts he performed the stipulated service until the end of February, 1861, in one case, and until the end of March, 1861, in the other, and was paid by the United States up to and including the 30th of September, 1860. This suit is brought to recover compensation from the 30th of September to the end of May, 1861, under the provisions of the Sundry Civil Appropriation Act March 3, 1877 (19 Stat. L., 344, 362, ch. 105).
The suit was commenced March 30, 1882, and the petition was amended December 13,1883, counting on the same cause of action. The time of the institution of the suit brings the cause of action within the limitation prescribed by section 1069, and the only question we are to determine is, what, if anything, is due the claimant for services rendered from the date of payment, to wit, the 30th of September, 1860. The jurisdiction of this court to entertain and determine claims under said act for the transportation of mails in the Southern States in the ye ar 1861 has been repeatedly recognized by the decisions of this and the Supreme Court (Hukill et al., 18 C. Cls. R., 181: George's Case, ib., 432; Wray's Case, 19 id., 194, 154; Chesapeake & Ohio R. R. Co., ib., 300; ib., 49; Nashville, Chattanooga & Saint Louis Railway Company, ib., 476; Blount, administrator, 21 id., 274). The case of the Nashville, Chattanooga & Saint Louis Railway Company was appealed to the Supreme *358 Court and the jurisdiction of this court affirmed (113 U. S. R., p. 261).
The statute provides “that any such claims which have been paid by the Confederate States Government shall not be again paid.”
The findings show that the claim sought to be recovered in this proceeding was not paid by the “ Confederate States Government,” and therefore it does not come within that clause of the statute prohibiting the payment of it under the appropriation made by Congress. The court has found the ultimate fact that no payment was made to the decedent by the authorities of the said government ; and it is not necessary to discuss any question incident to that fact. The material point of contention made in the argument is, at what period did the State of Mississippi engage “in war against the United States?” The State of Mississippi passed an ordinance of secession on the 9th day of January, 1861, and it is insisted that from that time the State was engaged in a war with the United States within the meaning of the act upon which this suit is founded. In the case of the Chesapeake & Ohio Railroad Company v. The United States (26 C. Cls. R., 66) this court held that the State of Virginia engaged in war, within the meaning of the act of 1877, on the 17th of April, 1861; bub antecedent to that date was issued the President’s proclamation calling out 75,000 troops to suppress insurrection and to cause the laws of the United States to be duly executed.
The ordinance of secession of the State of Virginia, passed on the 16th of April, was followed in quick succession by the acts of its governor in refusing to recognize the obligation of the State to furnish .troops under the proclamation of the President, issued on the 15th of April. He not only refused to comply with the requisition of the President, but directed the military organizations of the State to hold themselves in readiness, in subordination to him, to resist by the force of military power the execution of the laws of the United States, and the enforcement by the authorities of the United States, the proclamation of the President in calling forth the militia of the several States to suppress a combination which, on the 12th day of April, had inaugurated a state of actual war by firing upon and capturing a fort of the United States.
All the acts done upon the part of the authorities of the *359 State of Virginia had direct reference to a condition of public affairs incident to the bombardment and surrender of Fort •Sumpter, and the consequent action of the President of the United States. It was not the act of secession in the abstract which in the judgment of the court made a condition of war on the part of the State of Virginia, but that act, in connection with several others, affected by the condition of the country, because of the act of-the President. But it is not necessary to enlarge by way of argument upon the question .as to when the State of Mississippi “engaged in war” with the United States in legal contemplation. The Supreme Court have settled in the construction of the acts of the political department of the Government at what time time the different States of the Confederacy became “engaged in war.”
Upon a question of the right of appeal to the Supreme Court ■of the United States from the Circuit Court of the Southern District of Alabama, it became important in the decision of that question to determine how much time was to be deducted because of the existence of the war in the State of Alabama. In the decision of that question the court say: -
“Acts of hostility by the insurgents occurred at periods so various and of such different degrees of importance, and in parts of the country so remote from each other, both at the commencement and close of the war, that it would be difficult, if not impossible, to say at what precise day it began or terminated. It is necessary, therefore, to refer to some public act of the political departments of the Government to fix the dates, and for obvious reasons those of the Executive Department, which may be, and in fact was, at the commencement of hostilities, obliged to act during the recess of Congress, must be taken.
“ The proclamation of intended blockade may therefore be assumed as making the first of these dates, and the proclamation that the war had closed as making the second. But the war did not begin or close at the same time in all of the States. There were two proclamations of intended blockade; the first of the 19th of April, 1881, embracing the States of. South Carolina, Georgia, Alabama, Florida, Mississippi, Louisiana, and Texas; the second, of the 27th of April, 1861, embracing the States of Virginia and North Carolina.
* # # # # #
“In the absence of more certain criteria of equally general application, we must take the dates of these proclamations as ascertaining the commencement and close of the war in the States mentioned in them. The case of the Protector (12 Wall., 700).”
*360 The court decided that by virtue of the proclamation of the 19th of April, 1861, which embraced the State of Alabama, the war in said State began on the 19tb of April, 1861, and as the State of Mississippi is one of the States embraced in said proclamations, we must hold that in said State the war began at the same time. It was then that, in legal contemplation, the said State “engaged in war with the United States.” Counsel for the defendant has .cited decisions of the Supreme Court, which place as (the counsel insists) the commencement of the war prior to the time indicated in the decision in the case of the Protector. We have carefully examined those decisions, and do not find that they warrant the contention of counsel, but if variant to the doctrine announced in the ca,se in 12 Wallace, being prior to that case, they would be overruled in effect.
Although the jiroclamation of the President of the 16th of April recognized the existence of combinations in certain States (of which Mississippi was one) too powerful to be suppressed by the ordinary course of judicial proceedings, and although, as is known historically, Fort Sumpter had been captured by the insurgents, yet the Supreme Court, as a safe and “ certain criteria,” have assumed the date of the proclamation of April 19, 1861, and April 27, 1861, as the commencement of the war in the States affected by the provisions of said proclamations. The facts of this case do not bring the transaction to the proclamation of the 15th of April or of the proclamations blockading Southern ports, and the condition of the State of Mississippi from the 31st of March to the 19th of April is not material. The court having found that the claimant performed mail services in the State of Mississippi for the United States before the State of Mississippi “engaged in war” with the United States; that he was not paid after October 1,1861; that the service was not paid by the Government of the Confederate States, and that the unpaid balance under the contract with the United States between the 1st of October and the time when the service ceased, to wit, under one contract the 28th of February, 1861, and under the other on the 31st of March, 1861, is $1,286, a judgment for that amount will be entered in favor of the claimant.